IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:19-CR-26-TSE |
| LUIS BONILLA-HERNANDEZ | ) | |
| a/k/a SEBASTIAN, | ) | |
| a/k/a EL COMMANDANTE, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count One of the Information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. Between in and around August 28, 2015 through on or about July 6, 2018, within the Eastern District of Virginia and elsewhere, in and affecting interstate commerce, the defendant, LUIS BONILLA-HERNANDEZ, a/k/a SEBASTIAN, a/k/a EL COMMANDANTE, with others known and unknown to the United States, knowingly traveled in interstate commerce and used a facility in interstate commerce, including cell phones, with intent to otherwise promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of prostitution offenses in violation of the laws of Virginia, to wit: Virginia Code § 18.2-348, and of the United States, in violation of Title 18, United States Code, Section 2421(a), and thereafter performed and attempted to perform an act to promote, manage, establish and carry on such unlawful prostitution activity involving victims Ca.D.S., Cl.D.S., A.M.F., J.P.A., and M.V.O. (In violation of Title 18, United States Code, Sections 1952(a)(3) and 2.)

2. BONILLA-HERNANDEZ, along with Eliazar Duran Mota, operated a prostitution business out of their residences located in Northern Virginia.

3. The prostitution business run by BONILLA-HERNANDEZ and Duran Mota catered largely to Hispanic commercial sex customers. The females being prostituted were referred to as "Treinteras," a term derived from the Spanish word for thirty (treinta).

4. BONILLA-HERNANDEZ communicated with multiple females over his cell phone to set up weekly appointments for the women to work in prostitution in Northern Virginia.

5. A single female worked a week at a time under BONILLA-HERNANDEZ and Duran Mota.

6. The females, including Ca.D.S., Cl.D.S., M.V.O., A.M.F., and J.P.A., traveled individually during separate weeks via bus to Washington, D.C. The females traveled to Washington, D.C. from states such as Pennsylvania and New York.

7. After each female arrived via bus in Washington, D.C. for their scheduled week, BONILLA-HERNANDEZ and Duran Mota alternated picking the female up via car. After picking up the female, BONILLA-HERNANDEZ and Duran Mota drove the female from Washington, D.C. to Northern Virginia for purposes of prostitution.

8. Each female stayed at the residence of BONILLA-HERNANDEZ or Duran Mota for a week at a time. Each female worked Monday through Saturday. On Sunday, a new female would be obtained for purposes of prostitution. The new female would then work Monday through Saturday in prostitution.

9. BONILLA-HERNANDEZ and Duran Mota obtained commercial sex customers for the females through disguised business cards purportedly advertising automotive services and through word of mouth. BONILLA-HERNANDEZ provided his cell phone number of 571-525-8903 on some of the business cards. Customers called his cell phone to set up prostitution dates. BONILLA-HERNANDEZ and Duran Mota worked together to set up commercial sex dates over

the phone with paying customers.

10. After the prostitution dates were set up via cell phone, BONILLA-HERNANDEZ and Duran Mota alternated driving each female to the customers' homes and businesses for purposes of prostitution. The prostitution dates occurred throughout Northern Virginia. At the completion of each date, the female provided all of the money to the driver.

11. The females were instructed by BONILLA-HERNANDEZ and Duran Mota to charge the customers between $30 and $40.

12. The females engaged in ten to twenty prostitution dates per day.

13. BONILLA-HERNANDEZ and Duran Mota drove the females to various stores in order to purchase condoms for the prostitution dates.

14. At the end of the week on Saturday, BONILLA-HERNANDEZ would provide each female 50% or less of the prostitution earnings. BONILLA-HERNANDEZ would pay a portion of the money to Duran Mota. BONILLA-HERNANDEZ would keep the remainder.

15. On July 6, 2018, a residential search warrant was executed on BONILLA-HERNANDEZ's residence located in Sterling, Virginia.

16. During the execution of the search warrant, law enforcement located female J.P.A. at the residence.

17. Law enforcement also located business cards used to promote prostitution, condoms, lubricant, and approximately $14,035 in cash in the residence.

18. The acts taken by BONILLA-HERNANDEZ in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law and were not committed by mistake, accident, or other innocent reason.

19. In the event that the Court finds that the defendant has breached this Plea Agreement, this Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the Plea Agreement is presented to or accepted by a Court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

20. This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the government. It does not include each and every fact known to the defendant or the government, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: Maureen C. Cain
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Luis Bonilla-Hernandez, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Luis Bonilla-Hernandez

4

I am Luis Bonilla-Hernandez's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Alfred "Rob" Robertson, Esquire
Attorney for Luis Bonilla Hernandez